**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

UNITED STATES OF AMERICA,

> Plaintiff,

vs.                                    Case No.  2:06-cv-386-FtM-34SPC

$37,768.00 IN UNITED STATES
CURRENCY,

> Defendant.

_____/

## O R D E R[1]

**THIS CAUSE** is before the Court on the United States of America's ("United States")

Motion for Summary Judgment (Dkt. No. 23; Motion), which was filed on May 21, 2007.

Claimant Javier Zavala filed a response in opposition to the Motion.  See Memorandum

Opposing Summary Judgment (Dkt. No. 26; Opposition), filed June 11, 2007.  Accordingly,

the Motion is ripe for review.

### I.      Procedural Background

On August 2, 2006, the United States filed a civil forfeiture complaint, seeking

forfeiture of the defendant currency, pursuant to 21 U.S.C. § 881(a)(6), which provides for

the forfeiture of all moneys "furnished or intended to be furnished by any person in exchange

for a controlled substance or listed chemical" and "all proceeds traceable to such an

---

[1]      This is a "written opinion" under § 205(a)(5) of the E-Government Act and therefore is
available electronically.  However, it has been entered only to decide the motion addressed herein and
is not intended for official publication or to serve as precedent.

exchange."  See Verified Complaint for Forfeiture in Rem (Dkt. No. 1; Complaint) at 2; 21 U.S.C. § 881(a)(6).  The United States asserted that the defendant currency was subject to forfeiture because it constituted proceeds of Claimant Zavala's illegal drug activity.  See Complaint at 2.

On September 8, 2006, Claimant Zavala filed a claim to the defendant currency.  See Notice of Contesting of Forfeiture (Dkt. No. 9) at 1.   Subsequently, he filed an Answer  to the United States' Complaint.  See generally Answer (Dkt. No. 14; Answer), filed November 13, 2006.  In the Answer, Claimant Zavala asserted that he acquired the defendant currency through lawful means.  See Answer at 1.[2]

## II.   Background Facts

According to the Affidavit of Drug Enforcement Administration ("DEA") Special Agent Michael W. Kooper[3], in February of 2006, the Fort Myers Resident Office of the DEA received a call from a Source of Information ("SOI") who asserted that "he/she" was living with a man who possessed and sold large quantities of cocaine and marijuana.  See Complaint, Attachment A at 2.  Subsequently, Special Agents Kooper and Jose Diaz made contact with the SOI.  See id.   The SOI informed Special Agent Kooper that Claimant Zavala was the man the SOI lived with and that Claimant Zavala kept his money and drugs inside of a black backpack, which he took with him wherever he went.  See id.

---

[2]      Claimant Zavala also contended that the defendant currency was obtained through an illegal search and seizure.  See Answer at 1.  However, Claimant Zavala withdrew this argument at the final pretrial conference, which was held on September 17, 2007.  See Clerk's Minutes (Dkt. No. 29) at 1; Order dated September 17, 2007 (Dkt. No.28) at 1.

[3]      The United States submitted the Affidavit in support of the Complaint.

On March 2, 2006, at approximately 4:30 p.m., Special Agents Kooper, Diaz, and Mark Strang established surveillance of Claimant Zavala's residence and observed a GMC Yukon that the SOI had identified as one of Claimant Zavala's vehicles. See id.  After the GMC Yukon was observed traveling away from Claimant Zavala's residence, Special Agent Kooper notified Florida Highway Patrol ("FHP") Troopers Michael Grider and Michael Merritt. See id. at 2-3.  Special Agents Kooper and Strang followed the GMC Yukon, which was being driven by Claimant Zavala, to a bank that was located approximately one mile from Claimant Zavala's residence. See id. at 3.  Special Agent Kooper observed Claimant Zavala back into an unidentified third party vehicle as he was attempting to leave the parking lot and notified FHP Trooper Grider. See id.  FHP Trooper Grider responded to the scene of the accident and was joined a short time later by FHP Trooper Merritt. See id.

During their investigation of the accident, FHP Troopers Merritt and Grider noticed an odor of marijuana emanating from inside of Claimant Zavala's vehicle. See id. at 3; see also Motion, Exh. I at 1.  FHP Trooper Merritt also observed that Claimant Zavala appeared to be nervous and his hands were shaking. See id.  FHP Trooper Grider completed the accident investigation and utilized "JACK", his drug detecting K-9, to carry out an exterior sniff of the vehicle. See id.  "JACK" gave an alert to the vehicle and, after entering through the driver's door window, gave a positive alert to a black bag located in the rear of the vehicle. See id.  FHP Trooper Merritt arrested Claimant Zavala and placed him in a FHP Patrol vehicle. See Complaint, Attachment A at 3; Motion, Exh. I at 2. FHP Trooper Grider retrieved the black bag from Claimant Zavala's vehicle and discovered that it contained substances which were later positively identified as cocaine and marijuana, as well as the

3

defendant currency, a digital scale, a straw containing cocaine residue, empty plastic baggies, and three prescription bottles[4]. See Complaint, Attachment A at 4; Motion, Exh. I at 2-3.   A GNC bottle containing 291 unidentified tablets was also located behind the passenger's seat. See Complaint, Attachment A at 4; Motion, Exh. I at 3.

While Claimant Zavala was in the patrol car, he informed FHP Trooper Merritt that the currency "with checks wrapped around it in the bag" belonged to him. See id. After FHP Trooper Merritt advised Claimant Zavala of his Miranda rights, Claimant Zavala again claimed to be the owner of the defendant currency. See id. However, when FHP Trooper Merritt asked Claimant Zavala whether the drugs were also his, Claimant Zavala requested an attorney. See id. As FHP Troopers Grider and Merritt were processing the evidence, Claimant Zavala made statements about the weight of the drugs as they were placed on the scale and stated that the defendant currency was separated into bundles as one bundle was his "sweat money" while the other bundle was the currency he owed to his drug supplier. See Complaint, Attachment A at 4-5; Motion, Exh. I at 4.[5]

To support his claim that he acquired the defendant currency through lawful means, Claimant Zavala disclosed information regarding his earned income to the United States.

---

[4]       The prescription bottles contained the following: (1) 16 tablets of Oxycodone; (2) 7 tablets of Xanex; (3) 1 tablet of Propoxyphenenapsylate; (4) 1 tablet of Tizanidine; (5) 1 tablet of Amphetamine; (6) 13 unidentified tablets; (7) 18 tablets of Methadone. See Complaint, Attachment A at 4; Motion, Exh. I at 2-3.

[5]       In addition, the FHP Patrol vehicle in which Claimant Zavala was placed following his arrest was equipped with a concealed audio recorder. See Complaint, Attachment A at 3; Motion, Exh. I at 2. FHP Trooper Merritt later retrieved the audio recorder from the FHP Patrol vehicle. See Complaint, Attachment A at 6; Motion, Exh. I at 4. A review of the audio recording revealed that Claimant Zavala spoke on his cellular phone regarding the weights and types of contraband inside of the black bag before the FHP Troopers informed him regarding they had found. See Complaint, Attachment A at 6; Motion, Exh. I at 4-5.

See Motion at 4-5.  Specifically, Claimant Zavala provided the United States with tax returns for the years 2002 and 2003 in which he reported an adjusted gross income of $7,136 for the 2002 tax year and $9,533 for the 2003 tax year.  See id. at Exhs. A, B.  Claimant Zavala also provided the United States with the following: (1) a 2004 W-2 from Gulf Coast Specialty Services, Inc. reporting wages in the amount of $4,421; (2) a 2004 W-2 from South East Personnel Services showing $15,204 in wages; and (3) a 2005 W-2 from South East Employee Leasing indicating wages in the amount of $15,897.  See id. at Exhs. C, D, E. Lastly, Claimant Zavala submitted a letter from David L. Rodkey, the Treasurer of Painting by TD Rodkey, Inc., who stated that, between January 1, 2006, and February 28, 2006, Claimant Zavala earned $4,320 plus $80 to $100 a week for gasoline, food, drinks, and other items.  See id. at Exh. F.[6]

During his deposition, Claimant Zavala answered questions regarding his employment history, including the amount of income he received from various jobs.  See id., Exh. G at 7-18.  With respect to expenses, Claimant Zavala testified that, since 2006, he has paid approximately $ 625 a month in child support for three of his four children.  See id., Exh. G at 6, 9, 13-14.   He has also paid expenses related to the care of his fourth child who was living with him at the time of the arrest.  See id., Exh. G at 13–14. Claimant Zavala acknowledged that he paid $200 a month for his probation in 2006.  See id. at 16. Additionally, Claimant Zavala admitted that, after he paid these and other expenses, he was

---

[6]        According to the United States, T.D. Rodkey was Claimant Zavala's employer at the time of his arrest.  See Motion at 5.

probably left without any money at the end of the month and no one in his family was giving him money.  See id.

When questioned in his deposition regarding his knowledge of the contents of the black bag, Claimant Zavala repeatedly asserted his Fifth Amendment privilege.  See id. at 25.  While Claimant Zavala did assert that he was the owner of the defendant currency, he refused to answer questions regarding how the defendant currency ended up in the black bag, the other contents of the black bag, or the statements he purportedly made to law enforcement officers regarding the defendant currency, including his explanation as to how the currency was divided into bundles.  See id. at 26.

### III.    Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the nonmovant.  See Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Pub. Co., 9 F.3d 913, 919 (11th Cir. 1993)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial.  See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). Rule 56 of the Federal Rules of Civil Procedure permits the moving party to discharge this burden with or without supporting affidavits.  See Fed.R.Civ.P. 56(a), (b).  "When a moving

6

party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." <u>Jeffery v. Sarasota White Sox, Inc.</u>, 64 F.3d 590, 593-94 (11th Cir. 1995) (internal citation and quotations omitted).  In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." <u>Haves v. City of Miami</u>, 52 F.3d 918, 921 (11th Cir. 1995) (citing <u>Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro</u>, 38 F.3d 1571, 1578 (11th Cir. 1994)).

## IV.    Summary of Argument

In the Motion, the United States argues that Claimant Zavala lacks Article III standing to contest the forfeiture of the defendant currency.  <u>See</u> Motion at 9-11.  In addition, the United States contends that the defendant currency is subject to forfeiture because it has demonstrated by a preponderance of the evidence that the defendant currency consisted of proceeds from Claimant Zavala's illegal drug trafficking activity and Claimant Zavala has not demonstrated that he is an innocent owner of the defendant currency.  <u>See</u> <u>id.</u> at 9-19.

In his two page Opposition, Claimant Zavala merely reasserts that he acquired the defendant currency through lawful means.[7]  <u>See</u> <u>generally</u> Opposition.

---

[7]        In the Opposition, Claimant Zavala also contended that the defendant currency was obtained through an unlawful search.  <u>See</u> Opposition at 2.  However, as noted above, Claimant Zavala has withdrawn this argument.

### V.        Discussion

#### A.        Whether Claimant Zavala has Article III standing

As noted above, the United States contends that Claimant Zavala has failed to establish that he has Article III standing to challenge the forfeiture of the defendant currency. See Motion at 9-11.   Relying on United States v. $148,840.00 in U.S. Currency, 485 F.Supp.2d 1254 (D. N.M. 2007), the United States maintains that Claimant Zavala lacks Article III standing given his failure to present evidence to establish his ownership or control of the defendant currency. See Motion at 9-11.  In support of its position, the United States notes that Claimant Zavala refused to answer any questions regarding whether the black bag belonged to him, whether he was aware of the contents of the black bag, whether he placed the defendant currency into the black bag, and whether he was aware that the defendant currency was separated into bundles.  See id.  The United States further contends that, while Claimant Zavala asserts that he is the owner of the defendant currency, he has not submitted any evidence showing his ownership, control, title, or possessory interest in the defendant currency. See id. at 11.

As a threshold matter, an individual challenging a civil forfeiture action "must first demonstrate an interest in the seized property sufficient to satisfy the court of his or her [Article III] standing as a claimant."  See United States v. Twenty (20) Cashier's Checks, Having the Aggregate Value of Two Hundred Thousand ($200,000) Dollars in U.S. Currency, 897 F.2d 1567, 1571 (11th Cir. 1990); United States v. Sixty-Eight Thousand Five Hundred Eighty Dollars ($68,580.00) in U.S. Currency, 815 F.Supp. 1479, 1481 (M.D. Ga. 1993); see also  United States v. $38,000.00 in U.S. Currency, 816 F.2d 1538, 1543 (11th

Cir. 1987).  To establish Article III standing, a claimant need not assert that he is the owner of the seized property as a lesser property interest, such as a possessory interest in the seized property, is sufficient.  See $38,000.00 in U.S. Currency, 816 F.2d at 1544. Nevertheless, the claimant bears the burden of establishing Article III standing at all stages of the litigation.  See United States v. Nine Hundred Sixty Thousand Dollars in U.S. Currency, No. 05-12673, 2006 WL 3369525, at *4 (11th Cir. Nov. 21, 2006).  Moreover, as the case progresses, the claimant, in meeting this burden, "must move forward 'with the manner and degree of evidence required at the successive stages of the litigation.'"  See id. (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).  Indeed, the Supreme Court has noted that, while general factual allegations may be sufficient to establish an individual's standing at the pleading stage, an individual can no longer rest on these general allegations in responding to a motion for summary judgment and "must set forth by affidavit or other evidence specific facts which for purposes of the summary judgment motion will be taken as true."  See Lujan, 504 U.S. at 561.

The Court finds the United States' reliance on $148,840.00 in U.S. Currency for the proposition that this claimant has failed to establish standing to be misplaced.  In $148,840.00 in U.S. Currency, the United States District Court for the District of New Mexico found, at the summary judgment stage, that the claimant lacked Article III standing to challenge the forfeiture of currency.  See $148,840.00 in U.S. Currency, 485 F. Supp. 2d at 1259.  The district court observed that, during a deposition, the claimant repeatedly asserted his Fifth Amendment right against self-incrimination as to all questions "regarding his ownership of the currency, including questions regarding the source of the currency, the

packaging of the currency, how the currency [ended up in the location in which it was discovered] and whether the currency represented the proceeds of illegal drug trafficking." See id. at 1257.  The district court also reported that the claimant invoked his Fifth Amendment right in response to questions about his sources of income and his employment history and did not provide any evidence to support his claim of ownership. See id. at 1257, 1259.  After noting that mere allegations of ownership would not be sufficient to establish standing at the summary judgment stage of litigation, the district court found that the claimant lacked Article III standing to challenge the forfeiture of the defendant currency due to his failure to provide any evidence in support of his claim of ownership. See id. at 1259.

In the instant case, Claimant Zavala asserted his Fifth Amendment privilege when he was asked questions regarding his knowledge of the contents of the black bag, how the defendant currency ended up in the black bag, and whether he made statements to FHP Trooper Merritt indicating that the money was sweat money and explaining how the currency was separated into bundles. See Motion, Exh. G at 25-26.  However, he has made a specific claim of ownership in his deposition and produced evidence to support his claim of ownership.  Moreover, in support of his claim that he acquired the defendant currency through lawful means, Claimant Zavala provided the United States with copies of his 2002 and 2003 tax returns, his W-2s from 2004 and 2005, and a statement from a former employer regarding his income. See id. at Exhs. A-F.  In addition, unlike the claimant in $148,840.00 in U.S. Currency, Claimant Zavala did answer the United States' questions regarding his sources of income, his expenses, and his employment history. See generally

10

id. at Exh. G.  Thus, the Court declines to find that Claimant Zavala lacks standing to contest the forfeiture of the defendant currency.

### B.   Whether the United States established that the defendant currency is subject to forfeiture

The United States argues that the undisputed facts establish by a preponderance of the evidence that the defendant currency is subject to forfeiture as proceeds traceable to the exchange of controlled substances.  See Motion at 11-16.  Moreover, the United States asserts that Claimant Zavala cannot demonstrate that he is an innocent owner of the defendant currency.  See id. at 16-18.

Once the claimant establishes that he has Article III standing, the burden shifts to the United States to prove by a preponderance of the evidence that the seized property is subject to forfeiture.[8]  See 18 U.S.C. § 983(c)(1).  A preponderance of the evidence means that the United States "must present an amount of evidence sufficient to persuade the court that the claim or contention is more likely true than not true."  See United States v. 4 Meadowbrook Lake Condominium, Unit 308, Condominium #8, Located at 314 SE 10th Street, Dania, Florida 33004, No. 06-60079-CIV-COHN/SNOW, 2007 WL 809681, at *3 (S.D. Fla. March 15, 2007) (citing Eleventh Circuit Pattern Jury Instructions, Civil (2000), Basic Instruction 6 .1, Burden of Proof).  Property subject to forfeiture includes all moneys given or intended to be given in exchange for illegal drugs, the proceeds of such an exchange, and all moneys used or intended to be used to facilitate a violation of the drug

---

[8]     Prior to the enactment of the Civil Asset Forfeiture Reform Act of 2000, the United States was required to only establish probable cause to believe that the defendant property was subject to forfeiture.  See United States v. $26,620.00 in U.S. Currency, No. Civ. A. 2:05CV50WCO, 2006 WL 949938, at * 8 (N.D. Ga. April 12, 2006).

11

laws.  See 21 U.S.C. § 881(a)(6).  Once the government has demonstrated that the seized property is subject to forfeiture, the burden shifts to the claimant to demonstrate that he is an "innocent owner" under 18 U.S.C. § 983(d)(2).  See 18 U.S.C. § 983(d)(1).  An "innocent owner" is defined as an owner who "(i) did not know of the conduct giving rise to forfeiture; or (ii) upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property."  See 18 U.S.C. § 983(d)(2).

After reviewing the evidence in this case, the Court finds that the United States has established by a preponderance of the evidence that the defendant property is subject to forfeiture as proceeds of illegal drug trafficking.  First, the defendant currency was discovered in close proximity to drugs and drug paraphernalia.  As noted above, the defendant currency was found, along with large amounts of cocaine and marijuana, as well as various other drugs and drug paraphernalia, in a black bag that was located inside of a vehicle that Claimant Zavala had been driving.  See Complaint, Attachment A at 4; Motion, Exh. I at 1-3; see also $26,620.00 in U.S. Currency, 2006 WL 949938 at * 8 (stating that "a large amount of money found in close proximity to drugs or drug paraphernalia is evidence of drug trafficking.").  In addition, prior to the search, FHP Troopers Merritt and Grider noticed the odor of marijuana emanating from inside of Claimant Zavala's vehicle and K-9 "JACK" gave a positive alert to both Claimant Zavala's vehicle and the black bag.  See Complaint, Attachment A at 3; Motion, Exh. I at 1; see also $26,620.00 in U.S. Currency, 2006 WL 949938 at *8 (finding that "the positive alert of a certified drug detection dog may

12

be considered by the court in weighing the totality of the evidence in a civil forfeiture action.").

Second, according to the affidavit provided by Special Agent Kooper, Claimant Zavala admitted that the defendant currency was tied to drug trafficking. Specifically, Special Agent Kooper averred that Claimant Zavala made statements to law enforcement officers, following the seizure of the contents of the black bag, regarding the weight of the drugs and explained that one of the currency bundles was his "sweat money" while the other bundle represented money he owed to his drug supplier. See Complaint, Attachment A at 4-5; Motion Exh. I at 4.

Third, the amount of currency involved in the instant case, namely, $37,768.00, is an unusually large amount of cash for an individual to be carrying around in a bag. The Eleventh Circuit has recognized, for purposes of civil forfeiture actions, that the possession of a large sum of currency is "highly probative of a connection to some illegal activity." See United States v. $121,100.00 in U.S. Currency, 999 F.2d 1503, 1507 (11th Cir. 1993) (recognizing that such possession is insufficient by itself to establish a connection to illegal drugs). In addition, while Claimant Zavala contends that he acquired the defendant currency through legal means, a review of Claimant Zavala's legitimate sources of income, as evidenced by his tax returns, W-2s, and deposition testimony, does not appear to support this contention. Indeed, Claimant Zavala admitted, during his deposition, that, after he paid child support and his other monthly expenses, he was probably left without any money at the end of the month. See Motion, Exh. G at 16. Courts have recognized that a claimant's lack of a legitimate source of substantial income is probative evidence that the defendant

13

currency was connected to drug activity.  See United States v. Carrell, 252 F.3d 1193, 1201 (11th Cir. 2001) (evidence that claimants "have no visible source of substantial income" is probative evidence in a civil forfeiture action); United States v. $52,000.00, more or less, in U.S. Currency, CV No. 06-0366-KD-M, 2007 WL 1624786, at *5 (S.D. Ala. June 5, 2007) (stating that, "[i]n civil forfeiture cases, the absence of an apparent, verifiable, or legitimate source of substantial income is probative evidence of a substantial connection to illegal activity).

As the Court finds that the United States has met is burden of showing that it is more likely than not that the defendant currency is subject to forfeiture, the burden shifts to Claimant Zavala to demonstrate that he is an "innocent owner" under 18 U.S.C. § 983(d)(2). See 18 U.S.C. § 983(d)(1).  As noted by the United States, see Motion at 16, Claimant Zavala has not explicitly asserted that he is an "innocent owner" of the defendant currency. In any event, for the reasons noted above, the Court finds that Claimant Zavala has failed to establish that he is an innocent owner of the defendant currency.  In light of the foregoing, the Court finds that the Motion is due to be **granted**.  Accordingly, it is **ORDERED**:

1.    The United States of America's Motion for Summary Judgment (Dkt. No. 23) is **GRANTED**.

2.    Defendant $37,768.00 in United States Currency is forfeited to the United States of America under the provisions of 21 U.S.C. § 881 for disposition according to law.

14

3.      The Clerk of the Court is directed to enter **JUDGMENT** in favor of Plaintiff and to close the file.

**DONE AND ORDERED** at Fort Myers, Florida on October 26, 2007.

**MARCIA MORALES HOWARD**
United States District Judge

lc3


Copies to:

Counsel of Record